NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

TYLER CUE, )
)  Supreme Court No. S-18754
          Appellant, )
)  Superior Court No. 3KN-23-00286 CI
    v. )
)  MEMORANDUM OPINION
DESIRAE CHALLANS, )  AND JUDGMENT*
)
          Appellee. )  No. 2047 – October 2, 2024
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Kelly J. Lawson, Judge.

Appearances: David A. Case, 49th State Law, LLC, Soldotna, for Appellant. No appearance by Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

A superior court judge issued a long-term domestic violence protective order (DVPO) prohibiting a father from having contact with his son. The father filed a superior court appeal, which the superior court dismissed, reasoning that it lacked appellate jurisdiction to review an order issued by another superior court judge. The father appeals, arguing that the superior court judge who issued the DVPO did so in her

---

    \*       Entered under Alaska Appellate Rule 214.

capacity as a district court judge, meaning that an appeal to the superior court was the proper course.

We conclude that the superior court that issued the DVPO was acting as a superior court when it did so, and its order could not properly be appealed to the superior court. We further hold that the superior court that dismissed the appeal for lack of appellate jurisdiction did not err by failing to give the parties prior notice of its intent to do so. We therefore affirm the superior court's order dismissing the appeal.

## II.    FACTS AND PROCEEDINGS

Tyler Cue and Desirae Challans are the divorced parents of two children. In April 2022 Cue filed a petition for custody, which was assigned to Superior Court Judge Jennifer K. Wells in May. The superior court proceeding apparently resulted in an award of 50/50 shared physical custody, though the order itself is not in our record. It appears that the last orders in the case before the events giving rise to this appeal were a grant of the custody petition and a child support order, both entered on January 17, 2023. The superior court file was then closed.

In the meantime, in early January 2023, Challans had filed a petition for short- and long-term DVPOs on behalf of both children, alleging that Cue had assaulted one of them. A magistrate judge granted a 20-day ex parte DVPO for both children and awarded Challans temporary custody, with no visitation for Cue.

Twenty days later, on January 31, a hearing on the long-term DVPO was held before a different magistrate judge. At the outset, Cue's attorney pointed out that there was "a civil case that just resolved here real recently, and this [DVPO petition] obviously is asking to modify custody," so he "request[ed] that this matter be reassigned to Judge Wells, who's handling the civil case." The magistrate judge responded by explaining to Challans, who was unrepresented, that "typically" a DVPO case would be reassigned to the superior court judge in such circumstances; "certainly, if there was an open case," the case would be reassigned, but even if one was "just very recently

closed . . . it is better to be taken up by the superior court judge" who "just did the custody case" and "has more time to really look at best interests of the children." The magistrate judge's in-court clerk then contacted Judge Wells's chambers, which placed the continued hearing on her calendar in about two weeks' time. The parties both agreed to the new date, and the magistrate judge signed a reassignment order.

Both parties appeared before Judge Wells for two subsequent hearings. After taking testimony Judge Wells granted the long-term DVPO for one of the couple's two children. About a week later Judge Wells held another hearing to discuss necessary changes to the visitation schedule in light of the DVPO. Although the custody case had not yet been officially reopened, Judge Wells issued orders modifying the contact provisions in both the DVPO and the visitation order from the custody case, which was affected by the changes to the DVPO.

Cue filed a superior court appeal of the DVPO. The appeal, though late, was accepted and assigned to Superior Court Judge Kelly J. Lawson. Before briefing began, Judge Lawson dismissed the appeal sua sponte. She explained that the underlying case had not been heard in district court — from which an appeal to the superior court could properly be taken[1] — but rather "was heard and decided by Judge Wells as a Superior Court case," and the superior court lacked appellate jurisdiction to review a superior court order. Cue appeals; Challans did not participate in the appeal.

## III. STANDARD OF REVIEW

"We review questions of law, including questions of subject matter jurisdiction, de novo."[2] De novo review also "applies to constitutional issues."[3] When

---

[1]     *See* AS 22.10.020(d); AS 22.15.240(a).

[2]     *Hawkins v. Attatayuk*, 322 P.3d 891, 894 (Alaska 2014); *see also Sherrill v. Sherrill*, 373 P.3d 486, 489 (Alaska 2016).

[3]     *Bodkin v. Cook Inlet Region, Inc.*, 182 P.3d 1072, 1076 (Alaska 2008).

applying the de novo standard of review, we exercise our independent judgment and "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

## IV. DISCUSSION

### A. The Superior Court Properly Dismissed Cue's Appeal For Lack Of Appellate Jurisdiction.

"Subject matter jurisdiction is 'the legal authority of a court to hear and decide a particular type of case.' "[5] "The superior court is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters," including DVPO petitions.[6] The district court also has jurisdiction over DVPO petitions,[7] which may therefore be properly filed in either court.[8] A district court's decision is appealable to the superior court,[9] whereas a superior court's decision in a civil case, such as a case seeking a DVPO, is appealable to the supreme court.[10]

Cue first argues that "[a]s a constitutional matter, the question of what court is currently exercising jurisdiction is determined by where the matter is 'commenced, filed, or lodged[,]' " referencing article XV, section 17 of the Alaska Constitution.

He argues that because this DVPO matter was initially heard by magistrate judges, who are officers of the district court, the case was commenced in the district court and remained there notwithstanding the reassignment to Superior Court

---

[4] *Healy Lake Vill. v. Mt. McKinley Bank*, 322 P.3d 866, 871 (Alaska 2014) (quoting *John v. Baker,* 982 P.2d 738, 744 (Alaska 1999)).

[5] *Hawkins*, 322 P.3d at 894 (quoting *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006)).

[6] AS 22.10.020(a).

[7] AS 22.15.030(a)(10).

[8] AS 22.10.020(a); AS 22.15.030(b).

[9] AS 22.15.240.

[10] AS 22.05.010(a), (b).

Judge Wells, whose order was therefore a district court order properly appealable to the superior court.

The constitutional provision that Cue cites is irrelevant. Article XV lays out the "Schedule of Transitional Measures," the purpose of which, as noted in the article's preamble, was "[t]o provide an orderly transition from a territorial to a state form of government."[11] Once the transition was accomplished, "[t]here is no basis for assuming that such a transitional measure . . . should then . . . have any enduring or permanent quality which would make it an integral part of the fundamental structure of government established by the people of this state."[12] Section 17 governs the "Transfer of Court Jurisdiction" from territorial to state courts, a process completed in 1959.[13] Regardless of whether the language of Article XV tells us anything about how the framers viewed jurisdiction generally, it does not help us resolve this case.

In any event, to say that jurisdiction is fixed at the time a case is filed is too simplistic. As Cue acknowledges, matters are regularly transferred from one court to another "as provided by law." Superior court judges are sometimes assigned to hear matters as district court judges, a type of assignment that need not be made explicit.[14]

This case appeared before three different judges before Cue attempted to appeal the DVPO to the superior court. One magistrate judge issued the 20-day ex parte DVPO; a second magistrate judge began to hear Challans's petition for a long-term DVPO but on Cue's suggestion reassigned it to Judge Wells. The reassignment to Judge

---

[11]    Alaska Const. art. XV.

[12]    *Starr v. Hagglund*, 374 P.2d 316, 318 (Alaska 1962).

[13]    *See* ALASKA COURT SYS., THE ALASKA COURT SYSTEM: CELEBRATING 50 YEARS 1 (2009), https://courts.alaska.gov/media/outreach/docs/50yrs-exhibit.pdf.

[14]    *See* Alaska Admin. R. 24(e) ("When a superior court judge hears a matter that is pending in the district court, that judge sits as a district court judge, and a specific assignment to the district court is not required.").

Wells was clearly the appropriate course. It is common — and consistent with our "one family, one judge" policy[15] — for the decision on a long-term DVPO to be made by the superior court judge handling a related custody case, as the DVPO may well include limitations on contact that conflict with existing custody and visitation schedules.[16] Although magistrate judges, as judicial officers of the district court, have the authority to issue long-term DVPOs,[17] custody is the province of the superior court.[18] When superior court judges hear custody matters, including DVPOs with custody implications, they are acting in their capacities as superior court judges.

Ironically, it was Cue's own lawyer who, at the hearing on the long-term DVPO, recognized the expediency of reassigning the matter to Judge Wells so that she

---

[15]     *Cf.* AS 25.24.150(a) (establishing that in actions for divorce or separation, placement of child, or child-in-need-of-aid (CINA) proceedings, "the court may . . . during the pendency of the action, or at the final hearing or at any time thereafter during the minority of a child of the marriage, make, modify, or vacate an order for the custody of or visitation with the minor child that may seem necessary or proper"); AS 47.10.111–.113 (establishing that proceedings for adoption, guardianship appointment, and civil custody for child in state custody are heard by court presiding over CINA proceedings for that child); *Tara R. v. State, Dep't of Fam. & Cmty. Servs., Off. of Child.'s Servs.*, 541 P.3d 530, 541 (Alaska 2024) ("The legislature enacted [AS 47.10.111] in order to require a 'one judge, one child, one family' approach to children's cases mandating that all the hearings would be held before the judge assigned to the CINA case.").

[16]     *See* AS 18.66.100(c) (describing possible provisions of DVPO, including prohibitions on telephonic and other contact, removal of respondent from petitioner's residence, geographic restrictions, and award of temporary custody of children to petitioner with restrictions on respondent's visitation); *Green v. Dinh*, No. S-18080, 2023 WL 4926685, at *3 (Alaska Aug. 2, 2023) (explaining importance of considering DVPO petition brought on behalf of child in state custody as part of CINA proceedings "when the petition effectively functions as a request to make, modify, or vacate a custody or visitation order").

[17]     AS 22.15.100(9).

[18]     AS 25.20.060(a) ("If there is a dispute over child custody, either parent may petition the superior court for resolution of the matter . . . .").

could hear it in her capacity as the superior court judge who had overseen the couple's very recent custody case. The magistrate judge's comments in response were exactly right: that it made "sense for judicial economy . . . for the judge who just did the custody case" to preside over the DVPO proceeding as well. She explained that as the magistrate judge she "really just focus[ed] on safety"[19] whereas the superior court "has more time to really look at best interests of the children." And following reassignment the process worked as it should: after hearing and deciding the DVPO petition, Judge Wells modified the visitation order in the parties' custody case (something a district court judge could not do) to ensure consistency in the provisions governing custody and visitation. There is no doubt that Judge Wells was acting in her capacity as a superior court judge, and Judge Lawson therefore did not err when she dismissed Cue's appeal for lack of appellate jurisdiction.[20]

### B. The Superior Court Did Not Err By Failing To Give The Parties Prior Notice Of Its Intent To Dismiss The Appeal For Lack Of Jurisdiction.

Cue also contends that the superior court erred by dismissing his appeal without first notifying the parties that it was considering doing so and giving them an opportunity to argue against dismissal. He asserts that "if a court intends to dismiss a matter on its own motion, it must, at a minimum, give the parties an opportunity to be heard." Again we disagree.

---

[19] *See, e.g., Olson v. State*, 77 P.3d 15, 18 (Alaska App. 2003) (explaining that "a short-term domestic violence protective order is a temporary order issued to prevent an imminent threat of domestic violence").

[20] Although there is no doubt about the capacity in which Judge Wells was acting in this case, there may be others in which the court's capacity is less clear, particularly when the court uses form orders, as here, that are ambiguously captioned "In the District/Superior Court for the State of Alaska" with neither level of court struck out or highlighted. We encourage courts to make their decision-making capacity clear on form orders of this type to ensure that there is no uncertainty about the proper route for appeal.

Lack of jurisdiction may be raised at any point in litigation, "and if noticed *must* be raised by the court if not raised by one of the parties."[21]  Pursuant to Alaska Civil Rule 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter the court *shall* dismiss the action."[22]  The Civil Rules further require that parties be notified of a pending dismissal for want of prosecution (presumably because such notice may spur action to preserve the case),[23] but not in other circumstances.[24]

In arguing that dismissal without notice was nonetheless improper, Cue states that " 'notice and opportunity to be heard' is a right of constitutional magnitude." But any due process challenge, to be successful, must demonstrate "some actual

---

[21]     *Hawkins v. Attatayuk*, 322 P.3d 891, 894-95 (Alaska 2014) (emphasis added) (quoting *Hydaburg Co-op. Ass'n v. Hydaburg Fisheries*, 925 P.2d 246, 248 (Alaska 1996)).

[22]     Alaska R. Civ. P. 12(h)(3) (emphasis added).

[23]     Alaska R. Civ. P. 41(e)(2) (requiring court to "hold a call of the calendar" or clerk to "send notice to the parties to show cause in writing why the action should not be dismissed" for dismissals for want of prosecution); Alaska R. App. P. 511.5(a) ("If an appellant or an appellant's counsel fails to comply with these rules, the clerk shall notify the appellant and the appellant's counsel in writing that the appeal will be dismissed for want of prosecution unless the appellant remedies the default within 14 days after the date of notification . . . .").

[24]     *Contra* Tex. R. App. P. 42.3 (requiring ten days' notice to all parties when court dismisses action on its own motion due to want of jurisdiction, want of prosecution, or appellant's failure to comply with requirements); Maryland Rule 2-507(d) (requiring that "[w]hen an action is subject to dismissal . . . the clerk, upon written request of a party or upon the clerk's own initiative, shall serve a notice on all parties pursuant to Rule 1-321 that an order of dismissal for lack of jurisdiction or prosecution will be entered after the expiration of 30 days unless a motion is filed under section (e) of this Rule").

prejudice, not merely the 'theoretical possibility of prejudice.' "[25]  Cue did not and cannot show he was prejudiced by the proper dismissal of his superior court appeal — a point he appears to concede when he acknowledges in his briefing that if the DVPO was entered in error and he cannot appeal it to the superior court, he can appeal it instead to this court.[26]

Lastly, Cue argues that if we hold that his superior court appeal was properly dismissed, we should "allow the appeal to continue in this court on the merits" of the DVPO and set a schedule for a new round of briefing.  We decline to do so.  Cue appealed only Judge Lawson's order dismissing his appeal; with the appeal thus limited, Challans chose not to participate.  If Cue wants to appeal a different order from a different judge — Judge Wells's order granting the DVPO — he must move for leave to file a late appeal, giving Challans the opportunity to respond.[27]

## V.    CONCLUSION

We AFFIRM the superior court's order dismissing Cue's appeal for lack of jurisdiction.

---

[25]    *Patrick v. Mun. of Anchorage, Anchorage Transp. Comm'n*, 305 P.3d 292, 301 (Alaska 2013) (footnote omitted) (quoting *D.M. v. State, Div. of Fam. & Youth Servs.*, 995 P.2d 205, 212 (Alaska 2000)).

[26]    *See* AS 22.05.010(a) ("The supreme court has final appellate jurisdiction in all actions and proceedings.  However, a party has only one appeal as a matter of right from an action or proceeding commenced in either the district court or the superior court."), (b) ("Appeal to the supreme court is a matter of right only in those actions and proceedings from which there is no right of appeal to the court of appeals under AS 22.07.020 or to the superior court under AS 22.10.020 or AS 22.15.240.").

[27]    *See* Alaska R. App. P. 503(b), (d).